```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                     CHARLOTTE DIVISION
                      3:05CV205-02-MU
```

| | | |
|---|---|---|
| **BENJAMIN F. HOWARD,** | ) | |
|     **Petitioner,** | ) | |
| | ) | |
|         v. | ) | **O R D E R** |
| | ) | |
| **TODD PINION, Supt.,** | ) | |
|     **Respondent.** | ) | |
| _____) | | |

**THIS MATTER** is before this Court upon the petitioner's "Motion For Relief Upon The (10-28-05), Judgment, filed November 8, 2005. For the reasons stated herein, the petitioner's Motion will be denied.

As recounted in the Court's Order of dismissal at which this Motion is aimed, the record shows that on November 4, 1992, the petitioner pled guilty to Second Degree Murder, Armed Robbery, Assault with a Deadly Weapon with Intent to Kill, and Assault with a Deadly Weapon Inflicting Serious Injury. Consequently, on that occasion, the Superior Court of Mecklenburg County sentenced the petitioner to a term of life plus twenty years imprisonment. The record further reflects that the petitioner did not file a direct appeal of these matters.

Rather, according to the Habeas Petition and other documents filed in this case, on or about April 26, 2004, the petitioner filed a Motion for Appropriate Relief ("MAR" hereafter) in the

Superior Court of Mecklenburg County, "seeking re-sentencing" on the ground that his trial attorney had been ineffective by failing to obtain a "Committed Youthful Offender" hearing for him. However, the petitioner's MAR was summarily denied. Next, the North Carolina Court of Appeals summarily denied the petitioner's Petition for a Writ of Certiorari. Thereafter, on June 25, 2004, the State Supreme Court denied the petitioner's Petition for a Writ of Certiorari. Finally, on February 3, 2005, the State Supreme Court denied the petitioner's Petition for Discretionary Review, along with a host of other miscellaneous motions which he had filed.

Consequently, after the passage of more than 12 years since the time that the petitioner was convicted and sentenced, on May 2, 2005, he came to this Court, seeking to challenge his sentencing proceedings. That is, by his Petition for a Writ of <u>Habeas Corpus</u>, the petitioner argued that he was entitled to resentencing as a Committed Youthful Offender; and that his trial attorney had been ineffective by virtue of his failure to advise the petitioner of that entitlement, or to present mitigating evidence in order to obtain a CYO sentence for the petitioner.

In addition, inasmuch as the petitioner obviously was aware that his Petition could be construed as time-barred, he advised the Court that he was proceeding under 28 U.S.C. §2244(E)(A)(ii) [sic], which provision reportedly allows for the extension of the

2

limitations period based upon the delayed discovery of the "factual predicate" of the claims raised in the federal habeas Petition. However, inasmuch as §2254(e)(2)(A)(ii) relates exclusively to whether the petitioner has demonstrated that he is entitled to a hearing because his claim relies on a "factual predicate that could not have been previously discovered . . . ," the petitioner's contention that his Petition was timely filed instead will be analyzed under §2244(d)(1)(D), which provides that the one-year limitations period can be run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

In any event, review of his Petition reflects that the petitioner argued that he had not learned of his entitlement to pursue a CYO sentence until March 2004, when an employee of the North Carolina Department of Corrections reviewed his records and advised him of that matter. Thus, the petitioner asserted that once the period during which he pursued collateral review was excluded from the calculations, it was clear that he had filed his Petition within one-year of the date of his discovery of the CYO provisions, and so his claims were not time-barred.

Although the Court was far from convinced that the petitioner's Petition could be deemed timely filed, the Court directed the respondent to file a response to the Petition. To

3

that end, on August 17, 2005, the respondent filed his "Motion For Summary Judgment And Answer To Petition . . . ."

Pertinent to this Motion, and as the Court indicated in its Order of October 28, 2005, the respondent took issue with the petitioner's assertion that his Petition was timely filed. Indeed, the respondent contended that the petitioner's reliance upon 28 U.S.C. §22444(d)(1)(D) was misplaced. Rather, the respondent argued that the petitioner obviously knew, or should have known of the critical fact that gave rise to his claim, <u>i.e.</u>, that he was 18-years-old at the time of his conviction. Therefore, the respondent argued that the petitioner's belated discovery of the CYO provision could not constitute the discovery of the "<u>factual</u> predicate" for his current claims (emphasis added).

Accordingly, the respondent argued that, due to the petitioner's decision not to pursue a direct appeal, his pre-AEDPA conviction became final on or about November 14, 1992. Based upon relevant case law, petitioner's one-year limitations period had to be construed as running from the AEDPA's April 24, 1996 enactment date until April 24, 1997. However, because the petitioner admittedly did not commence his pursuit of collateral review until well after that date, there was no way that the Petition could be deemed timely filed. Nor could the limitations period be equitably tolled on the basis of any information set

forth in the record or by the petitioner.  Therefore, the respondent argued that the petitioner's case was subject to a summary dismissal on statute of limitations grounds.

Next, in accordance with well-settled precedent, on June 27, 2005, the undersigned entered a Roseboro-type Order,[1] advising the petitioner of the respondent's Motion for Summary Judgment, that it appeared that the respondent might have been entitled to a judgment as a matter of law, and that he had a responsibility to respond to the respondent's Motion within thirty days. According to the Court's calculations, the petitioner's response was due to be filed here on or before July 28 2005.

However, on July 6, 2005, the petitioner wrote to the Court, inquiring about why he was directed to respond to the respondent's Motion since he already had filed his "Summary Judgment & Transverse" [sic] in response to that Motion.  Nevertheless, after checking the record of this case, on July 12, 2005, the Court wrote to the petitioner, advising him that it had not received his "Summary Judgment & Transverse," or any other response from him.  Therefore, the Court told the defendant that he had until July 29, 2005 to file his response to the subject Motion for Summary Judgment.

As far as the Court was aware, the July 29, 2005 deadline passed without exception for this case.  Indeed, it was not until

---

[1] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

October 2005 when the Court reviewed the docket of this case and concluded that no additional documents were recorded from the petitioner. Accordingly, upon its review of the case, the Court determined that the respondent's arguments that the instant Petition was untimely filed were well reasoned; and that it did not appear that the petitioner could prevail on his claims in any case. Therefore, by Order of October 28, 2005, the respondent's Motion for Summary Judgment was granted, and the subject Petition was dismissed.

Thereafter, the petitioner filed the instant "Motion For Relief Upon The (10-28-05) Judgment." By this Motion, the petitioner credibly asserts that he first mailed his "Summary Judgment & Transverse" document to the Court on July 5, 2005; that after he received the Court's letter of July 12, 2005 he, in fact, resubmitted that document in response to the respondent's Motion for Summary Judgment; and that the postal receipt--which he attached to his Motion for Relief--established that the second copy of his response had arrived at this federal Courthouse on July 18, 2005.

Although the Court's docket sheet continues to reflect that no such response ever was filed by the petitioner, this Court must give the petitioner the benefit of the doubt and conclude that the subject document was received at this Courthouse, but somehow misdirected or misplaced. Such conclusion is supported

6

by the petitioner's documentary exhibits, and by counsel for the respondent's representation that he actually received copies of the petitioner's response during the same time period that the petitioner reports that he sent them.

The Court now has obtained its own copy of that response from counsel for the respondent, and so it will reconsider the petitioner's Petition and the respondent's Motion for Summary Judgment in light of the petitioner's "Summary Judgment & Transverse."

As is obvious from the foregoing factual recitation, the critical issue which must first be addressed is whether the petitioner was able to overcome the respondent's evidentiary forecast which tended to show that the instant Petition was untimely filed. Upon careful consideration, the undersigned finds that the petitioner was not able to overcome that forecast.

In his "Summary Judgment & Traverse," the petitioner challenged the respondent's reliance upon out-of-district precedent in support of his argument that the petitioner's delayed discovery of the CYO statute does not constitute the discovery of the "factual predicate" for his claims so as to extend the one-year limitations period. Nevertheless, despite the fact that he has the burden of proof in this matter, the petitioner did not cite to any authority which supports his position that his belated discovery of the CYO provisions could be used to extend the

7

limitations deadline under §2244(d)(1)(D). Instead, the petitioner ignored the relevant language of the statute, and focused on the dates which he believed the Court should apply in its calculations.

Notwithstanding the petitioner's strong beliefs to the contrary, however, this Court is persuaded by the respondent's argument. That is, §2244(d)(1)(D) provides that the one-year limitation period can be calculated to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." However, since legal precedent for a claim--such as the CYO provisions to which the petitioner is pointing--and a factual predicate clearly are <u>not</u> the same thing, the petitioner's belated discovery of that provision cannot serve as a basis for extending his one-year limitations period.

To put it another way, it is the knowledge of facts, <u>i.e.</u>, that he was 18 years old at the time of his conviction, and not actual knowledge of those facts' legal significance that starts a statute of limitations to run. <u>Miller v. Pacific Shore Funding</u>, 224 F.Supp.2d 977, 986-87 (D.Md. 2002). In sum, the petitioner's reported ignorance of the law governing his claims simply is not a valid excuse for his delay, <u>see</u> <u>Pearson v. North Carolina</u>, 130 F.Supp.2d 742 (W.D.N.C. 2001); <u>and</u> <u>Googerdy v. N.C. A&T State Univ.</u>, 386 F.Supp.2d 618, 628 (M.D.N.C. 2005); therefore, he

cannot rely upon §2244(d)(1)(D) to establish that his Petition was timely filed.

Moreover, the Court has considered, sua sponte, whether the petitioner's deadline may be equitably tolled, but has determined that it cannot be so tolled. Indeed, equitable tolling of the AEDPA statute of limitations is only allowed in "those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitations period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2004) (en banc), cert. denied, 541 U.S. 905 (2004). See also United States v. Sosa, 364 F.3d 507, 511-13 (4th Cir. 2004) (same). It goes without saying, however, that the petitioner's belated discovery of the legal basis for his claims is woefully insufficient to justify equitable tolling.

Finally, the Court has concluded that its earlier determination that the petitioner's Petition was time-barred should not be disturbed. Therefore, the petitioner's Motion for Relief Upon the (10-28-05) Judgment will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Clerk shall **DOCKET** the facsimile copy of the petitioner's "Summary Judgment & Transverse [sic]" and treat it as having been **FILED** on July 5, 2005, that is, the date on which the petitioner reports that he mailed the first copy of that document

9

to the Court; and

    2.   The petitioner's Motion for Relief Upon the (10-28-05) Judgment is **DENIED**.

**SO ORDERED.**

Signed: October 10, 2006

Graham C. Mullen
United States District Judge